IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**UNITED STATES OF AMERICA**

v.                                                                    **CRIMINAL NO. 1:21-cr-80-TBM-RHWR**

**JOSHUA CHRISTOPHER STOCKSTILL**

**ORDER DENYING MOTION FOR COMPASSIONATE RELEASE**

Joshua Christopher Stockstill pleaded guilty to one count of producing visual depictions of minors engaging in sexually explicit conduct. He was later sentenced to a 30-year term of imprisonment. Now, Stockstill has filed a Motion [69] for compassionate release, arguing that he should be released from prison due to certain extraordinary and compelling reasons.

Stockstill, however, failed to exhaust his administrative remedies with the Bureau of Prisons (BOP) prior to filing his Motion. As such, the Court lacks the authority to reduce his sentence. And, even if Stockstill had exhausted his administrative remedies, his motion fails because a reduction of his sentence would not be consistent with the sentencing factors in 18 U.S.C. Section 3553(a). Therefore, Stockstill's Motion for compassionate release is denied.

## I. FACTUAL AND PROCEDURAL HISTORY

On August 8, 2021, a federal grand jury returned a three-count indictment against Stockstill. [20], pp. 1-3. The indictment charged Stockstill with three counts of producing visual depictions of minors engaging in sexually explicit conduct in violation of 18 U.S.C. Sections 2251(a) and (e). *Id.* The grand jury later returned a four-count superseding indictment against Stockstill on September 8, 2021. [29], pp. 1-3. The superseding indictment charged Stockstill with three counts of producing visual depictions of minors engaging in sexually explicit conduct in violation of 18

U.S.C. Sections 2251(a) and (e) and one count of possessing visual depictions of a minor under the age of twelve (12) years old engaging in sexually explicit conduct in violation of 18 U.S.C. Sections 2252(a)(4)(B) and (b)(2). *Id.*

After reaching a plea agreement with the Government, Stockstill pleaded guilty to Count 1 of the superseding indictment—producing a visual depiction of minors engaging in sexually explicit conduct. [45]. Following the hearing on November 30, 2021, the United States Probation Office prepared a presentence investigation report (PSR), which provided in-depth information about Stockstill's background, his offense, and his criminal history. The facts underlying Stockstill's offense, based on investigations conducted by the Mississippi Attorney General's Office and the Federal Bureau of Investigations (FBI), were as follows:

- During an investigation, the National Center for Missing and Exploited Children (NCMEC) discovered a series of videos and photographs on a Russian website commonly used by individuals to post and trade images of child sexual abuse. These videos and photos depicted an individual changing the diaper of an unknown minor female child.

- In one of the videos, the face of the individual changing the diaper was shown after he apparently dropped the phone being used to record the video.

- The FBI, in collaboration with NCMEC, released a photo of the individual's face to the public and asked for assistance with identifying him. Within hours of the FBI's request, the Picayune Police Department received numerous tips that the individual resembled Joshua Stockstill, one of its patrol officers.

- FBI agents subsequently met with Stockstill and conducted a post-*Miranda* interview. During that interview, Stockstill was shown one of the videos depicting the minor female having her diaper changed. Stockstill stated that he recognized the video. He further revealed that the minor female, "A,"[1] is the child of a family friend; that she was nine years old when the video was taken; and that she was not required to wear a diaper anywhere other than his home.

---

[1] To protect the identity of the minor depicted in these images produced by Stockstill, the Court will refer to that minor as "A."

- Stockstill later informed the agents that he had a diaper fetish and that he had also taken photographs of his eight-year-old daughter, "B,"[2] in diapers as recently as a couple of weeks prior to the interview.

- When asked about the Russian website where the videos and photos were discovered, Stockstill stated that he was familiar with it and that he had an account on the website.

- When asked how the images and videos he took ended up on the website, Stockstill admitted to sending them to an individual he met on the site. That individual also had a diaper fetish and promised to send Stockstill similar images in return but never did.

- Stockstill informed the agents that he knew the images were uploaded to the Russian website and that he had tried to get them removed. He admitted that he knew it was wrong to involve minor children in his sexual fetish.

- After obtaining a search warrant for Stockstill's phone, the agents conducted a forensic examination of the phone and discovered multiple chat conversations on the Kik Messenger app.

- The first of these conversations involved the user "lexipooh52," whose account was registered to Stockstill's phone, and another user named "chasepeeler." Lexipooh52 would send images of "A" wearing a diaper to chasepeeler in exchange for images of chasepeeler wearing a diaper. As the conversation progressed, the images of "A" became more graphic and were used for purposes of sexual gratification.

- The second conversation involved lexipooh52 and a user named "hoosier360." Lexipooh52 informed hoosier360 that they could no longer trade photos and videos of "A," even though they had in the past, because hoosier360 had posted the images online. Lexipooh52 stated that he expected hoosier360 to keep the images of "A" for himself or trade them privately, not post them online. Hoosier360 admitted that he had traded the images of "A" with someone he should not have, which resulted in them being uploaded online.

- During further examination of Stockstill's phone, agents discovered videos and photos of two additional victims wearing diapers or having their genitalia exposed. In total, agents discovered approximately 22 videos and 40 photos conclusively depicting child sexual abuse material.

[47], pp. 6-12.

---

[2] To protect the identity of Stockstill's minor daughter, the Court will refer to her as "B."

The PSR also presented summaries of forensic interviews conducted with Stockstill's victims. *Id.* at pp. 12-17. In her interview, "A" disclosed that Stockstill required her to wear a diaper and would not let her use the toilet when she was at his home. *Id.* at 12. Stockstill told her that she would get in trouble if she told anyone about wearing a diaper. *Id.* Occasionally, "A" would ask to change her own diaper because it made her uncomfortable when Stockstill cleaned her "area," but Stockstill insisted that he clean her. *Id.* "A" was aware that Stockstill took photos of her while changing her, but he told her the photos were to ensure that he changed the diaper correctly. *Id.* He also told her that he immediately deleted them. *Id.* She was unaware that Stockstill took photos of her genitalia and was upset when she learned that Stockstill kept the photos instead of deleting them. *Id.*

In "B's" interview, she initially did not disclose any abuse, but she did disclose that some of the other victims were required to wear diapers when they stayed at her home. *Id.* at p. 13. In a subsequent interview, "B" disclosed that she recalled Stockstill, her father, taking photos of her in a diaper when her mother was not around. *Id.* at p. 14. Stockstill had her pose for the pictures and told her not to tell her mother. *Id.*

At Stockstill's April 6, 2022, sentencing hearing, Stockstill's attorney informed the Court that Stockstill was withdrawing all of his objections to the PSR. [63], p. 2. The Court then asked Stockstill, after he was placed under oath, whether it was accurate that he had "no objections to any of the information contained within the presentence investigation report[.]" *Id.* at p. 4. He responded, "yes, sir." *Id.* As such, the Court adopted the PSR without objection. *Id.* at p. 6.

The PSR provided that Stockstill should receive a total offense level of 43 and a criminal history category of I, resulting in a guideline imprisonment range of life. *Id.* at pp. 5-6. But, based

4

on the statutory maximum for Stockstill's offense, the Court was not permitted to sentence him to more than thirty years in prison. *Id.* Accordingly, the Court determined that Stockstill's sentencing guideline range was thirty years. *Id.*

Next, the Court moved to the 18 U.S.C. Section 3553(a) stage of the proceeding, where Stockstill's attorney presented arguments in favor of a downward variance from the guideline range. *Id.* at pp. 7-23. Stockstill's attorney argued that Stockstill should receive a sentence of 20-25 years because he had shown remorse for his actions and should be given an opportunity to have a life after prison. *Id.* at pp. 12-13. His attorney also spoke about the obstacles that Stockstill had overcome in his life including struggling to walk at an early age. *Id.* at pp. 13, 23.

The Government, meanwhile, opposed any downward variance for Stockstill. *Id.* at p. 8. It argued that (1) Stockstill used the trust the victim's parents placed in him as a police officer and a friend to gain access to his victims; (2) Stockstill used his position as a police officer and a family friend to force his victims into partaking in his sexual conduct; and (3) Stockstill put his own sexual gratification above the wellbeing of the minors placed in his care. *Id.* at pp. 8-11.

Stockstill was also given the opportunity to speak on his own behalf. *Id.* at pp. 18-19. He stated that he knew what he did was wrong, and he apologized to the investigators and attorneys for having to look at the child sexual abuse material he produced. *Id.* at p. 19. He also apologized to the parents of the victims. *Id.* at pp. 19-22.

The parents of the victims were also given the opportunity to speak at the hearing. *Id.* at p. 13. One parent spoke about the trust he had placed in Stockstill as a friend and as a police officer to care for his children. *Id.* at pp. 14-15. He also spoke about the impact that the abuse had had on his children, including crying themselves to sleep; being afraid of police officers; and asking what they

had done to deserve this. *Id.* at p. 15. And he described the pain he felt knowing that there are naked pictures of his child on the internet that can never be removed. *Id.* at p. 15. Another parent spoke about the pain she felt because her child, who is nonverbal, cannot tell her about the abuse he received from Stockstill. *Id.* at pp. 17-18. She asked the Court to sentence Stockstill to more than the thirty-year statutory maximum. *Id.* at p. 18.

After hearing these arguments and statements, the Court sentenced Stockstill to a term of thirty years in the custody of the Bureau of Prisons.[3] In doing so, the Court weighed the factors set forth in 18 U.S.C. Section 3553(a) and stated its reasons for imposing the sentence.

Now, Stockstill asks the Court for a reduction of his sentence pursuant to 18 U.S.C. Section 3582(c)(1)(A)(i). [69]. Stockstill also asks the Court to appoint counsel to represent him. *Id.* The Government has filed a Response [73] in Opposition to Stockstill's Motion.

## II. DISCUSSION AND ANALYSIS

"A court, on a motion by the BOP or by the defendant after exhausting all BOP remedies, may reduce or modify a term of imprisonment, probation, or supervised release after considering the factors of 18 U.S.C. § 3553(a), if 'extraordinary and compelling reasons warrant such a reduction.'" *United States v. Chambliss*, 948 F.3d 691, 692-93 (5th Cir. 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)(i)). To obtain compassionate release, the defendant must prove that (1) "extraordinary and compelling reasons" justify a reduction of his sentence; (2) a reduction of his sentence is consistent with the Sentencing Commission's policy statements; and (3) his "early

---

[3] The Court also sentenced Stockstill to supervised release for a term of life and ordered him to pay restitution in the amount of $300; a special assessment in the amount of $100; and an assessment in the amount of $10,000 under the Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018. [52], pp. 3, 6.

6

release would be consistent with the sentencing factors in 18 U.S.C. § 3553(a)." *United States v. Jackson*, 27 F.4th 1088, 1089 (5th Cir. 2022) (quoting 18 U.S.C. § 3582(c)(1)(A)-(c)(1)(A)(i)).

**A. Whether Stockstill exhausted his administrative remedies**

A court may only consider a defendant's motion for compassionate release "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" 18 U.S.C. § 3582(c)(1)(A). "So, a[ ] [defendant] has two routes by which he may exhaust his administrative remedies." *United States v. Garrett*, 15 F.4th 335, 338 (5th Cir. 2021). "Both begin with 'requesting that the [BOP] bring a motion on the defendant's behalf.'" *Id.* (alteration in original) (quoting *United States v. Franco*, 973 F.3d 465, 467 (5th Cir. 2020)). Then, the defendant may either (1) "exhaust[ ] all administrative rights to appeal" or (2) wait "30 days from the receipt of such a request by the warden." *Id.* (internal quotation marks omitted) (quoting 18 U.S.C. § 3582(c)(1)(A)).

To show that he exhausted his administrative remedies, Stockstill submitted an "Inmate Request to Staff" form he sent to the Social Work Department at FCC Butner. [69-1]. Stockstill apparently addressed the form to "Social Services/Warden Kelly," but he has not submitted any evidence showing that his request was ever received by the Warden at FCC Butner. *Id.* at p. 1.

On the form, Stockstill asks "Social Services/Warden Kelly" to "review the attached request for motion for reduction of sentence/'compassionate release' and respond at your earliest convenience." *Id.* The form also reveals that he received a response from the Social Work Department. *Id.* at pp. 1-2. Ms. Cook, a supervisory social worker at FCC Butner, informed Stockstill that his request "does not meet the criteria of any of the categories in the program

7

statement for review at the institution level." *Id.* at p. 2. She further informed him that "[i]f you would like for a request for Compassionate Release/Reduction in Sentence to be reviewed, please submit a request." *Id.* She also attached the proper forms for Stockstill to fill out and submit to request compassionate release. *Id.* But Stockstill has submitted no evidence showing that he ever submitted such a request or filled out the proper forms.

From this evidence, the Court finds that Stockstill did not exhaust his administrative remedies prior to filing this Motion. Stockstill submitted a form that was received by the Social Work Department, and that department informed him that he needed to submit the proper forms if he wished to have the Bureau of Prisons review his request for compassionate release. But Stockstill has not shown that he either "fully exhausted all rights to appeal a failure of the [BOP] to bring a motion on [his] behalf" or that he filed this Motion "30 days from the receipt of such a request by the warden." 18 U.S.C. § 3582(c)(1)(A). In fact, he has not submitted any evidence showing that the warden of his facility ever received his request. *See United States v. Ware*, No. 3:15-cr-494-B-2, 2021 WL 1662497, at *2 (N.D. Tex. Apr. 28, 2021) ("However, submission of a request is insufficient for exhaustion. Rather, exhaustion requires proof that the warden *received* the defendant's request.").[4] Accordingly, the Court lacks the authority to reduce Stockstill's sentence pursuant to 18 U.S.C. Section 3582(c)(1)(A).

**B. Whether Stockstill's early release would be consistent with 18 U.S.C. Section 3553(a)**

Even if Stockstill had exhausted his administrative remedies, his early release would not be consistent with the sentencing factors in 18 U.S.C. Section 3553(a). As such, the Court also denies Stockstill's Motion on this basis. *United States v. Chambliss*, No. MO:05-cr-00052-DC, 2019 WL

---

[4] *See also United States v. Board*, 91-cr-1219, 2022 WL 2079742, at *7 (E.D.N.Y. June 9, 2022); *United States v. Rios*, 1:16-cr-00096-AWI-SKO-3, 2020 WL 6343038, at *3 (E.D. Cal. Oct. 29, 2020).

13217464, at *2 (W.D. Tex. July 29, 2019) ("The Court may refuse to reduce a sentence despite the defendant's eligibility, as a matter of discretion, upon weighing the § 3553(a) sentencing factors.") (citing *United States v. Hafley*, 650 F. App'x 845, 846 (5th Cir. 2016)), *aff'd*, 948 F.3d 691 (5th Cir. 2020).

As the facts discussed above reveal, Stockstill engaged in very serious conduct that has produced far-reaching consequences for his victims and their families. He took advantage of the young children placed in his care by forcing them to wear diapers and by taking videos and photos of them as he changed those diapers, capturing images of their genitalia. He then sent those videos and photos to other individuals online in exchange for images of other individuals in diapers. And he admitted that he took those videos and photos and made those trades with others because he has a diaper fetish and gets sexual pleasure from seeing people wear diapers.

But those videos and photos did not just end up in the hands of the individuals Stockstill traded with. Instead, they continued to be shared and traded until some of them ended up online alongside other images of child sexual abuse. As such, Stockstill is not only responsible for producing these images of child sexual abuse, but he is also responsible for their presence online, which may be very difficult—if not impossible—to undo. That is something that these victims will have to live with: knowing that images of them may be online forever. In fact, the parent of one victim spoke at Stockstill's sentencing about the pain he has felt knowing that images of his child will potentially be online forever.

After considering this conduct, the Court finds, as it did at Stockstill's sentencing, that a 30-year term of imprisonment reflects the seriousness of Stockstill's offense, provides just punishment for the offense, and promotes respect for the law. Though the Court has considered

9

the struggles that Stockstill overcame to become a police officer, that history and the positive characteristics Stockstill has are outweighed by the extreme nature of his conduct—which included using his position as a police officer and the trust placed in him in that role to gain access to and authority over his victims.

It is also important that others know how serious this type of conduct is so that they may be deterred from committing similar conduct. A sentence of 30 years will afford adequate deterrence to such criminal conduct. Additionally, the sentence will help protect the public from further crimes by Stockstill. At Stockstill's sentencing, the Court was presented with the results of a psychosexual evaluation of Stockstill. The assessor of that test stated that he would categorize Stockstill on the high side of average risk for reoffending. The Court was also presented with testimony from the parents of Stockstill's victims. These parents informed the Court of the severe consequences that Stockstill's conduct has had on them and their children, including sleepless nights, fear of law enforcement officers, and an inability to understand why this happened to them. From this, the Court finds that there is a strong need to protect the public from Stockstill and future crimes by him.

To be sure, the Court has reviewed the analysis given at the sentencing hearing related to the Section 3553 factors and the Court remains of the same opinion. In conclusion, the Court finds that a reduction of Stockstill's 30-year sentence of imprisonment would be inconsistent with the sentencing factors in 18 U.S.C. Section 3553(a).

Although Stockstill's current request for compassionate release must be denied, he is set to be released on February 5, 2047, (in less than 23 years) and compassionate release could be appropriate sometime in the future if circumstances change. Indeed, the Court has reviewed

Stockstill's letters detailing the courses he has completed while incarcerated in an attempt to lower his points and reduce his recidivism rate. The Court commends Stockstill for the completion of various programs during his incarceration and is encouraged by his desire to gain new skills. Stockstill is urged to continue down this path so he can be eligible for the "Good Time Credit," and so he will remain free of crime when he is released.

Further, the Court is aware of the health issues Stockstill has experienced that he has relayed in his letters. But the information relayed in the letters does not justify release just over two years after being sentenced in light of the seriousness of the conduct and the other Section 3553 factors.

**C. Whether Stockstill is entitled to the appointment of counsel**

"Although a defendant in a § 3582(c) motion does not have a statutory or constitutional right to appointment of counsel, the Court may appoint counsel in the interest of justice." *United States v. Wilfred*, No. 07-351, 2020 WL 4698993, at *1 (E.D. La. Aug. 13, 2020).[5] "When exercising this discretion, courts consider 'whether the [defendant's] petition presents significant legal issues, and if the appointment of counsel will benefit the petitioner and the court in addressing this claim.'" *United States v. Adesanya*, No. 3:21-cr-0321-B, 2024 WL 251925, at *1 (N.D. Tex. Jan. 23, 2024) (alteration in original) (quoting *United States v. Molina-Flores*, No. 3:16-cr-130-N, 2018 WL 10050316, at *2 (N.D. Tex. Feb. 13, 2018)). Stockstill's Motion presents fairly straightforward factual and legal issues, and Stockstill has not shown how the appointment of counsel would benefit either him or the Court. Therefore, Stockstill is not entitled to the appointment of counsel.

---

[5] *See also United States v. Jackson*, No. 2:15-cr-8-KS-MTP, 2022 WL 1432558, at *1 (S.D. Miss. May 5, 2022) ("[A] defendant does not have a statutory or constitutional right to appointed counsel in matters this far removed from criminal proceedings." (internal quotation marks omitted) (quoting *United States v. Hereford*, 385 F. App'x 366, 368 (5th Cir. 2010))).

## III. CONCLUSION

IT IS THEREFORE ORDERED AND ADJUDGED that Stockstill's Motion [69] for compassionate release pursuant to 18 U.S.C. 3582(c)(1)(A)(i) is DENIED.

IT IS FURTHER ORDERED AND ADJUDGED that Stockstill's Motion [69] to appoint counsel is DENIED.

This the 7th day of August, 2024.

                                    _____
                                    TAYLOR B. McNEEL
                                    UNITED STATES DISTRICT JUDGE